# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)  Civil Action No.: 3:17-cv-03473-MGL<br>) |
| *Plaintiff*, | ) |
| v. | )<br>) |
| 13 PIT BULL-TYPE DOGS, | )<br>) |
| *Defendants* in rem. | )<br>) |

## UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE

The Plaintiff, the United States of America, brings this Complaint and alleges as follows, in accordance with Supplemental Rule G(2), Fed. R. Civ. P.[1]

## NATURE OF THE ACTION

1. This is a civil action *in rem* brought to enforce 7 U.S.C. § 2156(f) for the forfeiture of 13 pit bull-type dogs that were involved in a violation of the animal fighting venture prohibition section of the Animal Welfare Act, 7 U.S.C. § 2156. This action also seeks the forfeiture of any offspring these seized dogs may have before entry of a final order of forfeiture.

## DEFENDANTS *IN REM*

2. The Defendants *in rem* seized at 146 Dry Branch Way, Hopkins, South Carolina 29061, are as follows:[2]

---

[1] This case is related to *United States v. 37 Pit-Bull Type Dogs*, No. 3:17-02691-MGL (D.S.C.), see paragraphs 23-32, *infra*.

[2] Seven additional pit bull-type dogs (labeled USM-70, 71, 74, 75, 76, 77, and 78) were found at this location. Raqwan Thompson claimed ownership of these dogs and surrendered them to K2 Solutions, which is under contract with the U.S. Marshals Service to care for all of the dogs

      a. USM-73: a brown, thin female pit bull-type dog;

      b. USM-79: a red, very underweight female pit bull-type dog;

      c. USM-80: a tan, male pit bull-type puppy;

      d. USM-81: a tan and white, underweight female pit bull-type dog;

      e. USM-82: a brown female pit bull-type dog;

      f. USM-83: a tan and white, very underweight male pit bull-type dog;

      g. USM-84: a tan and white, very underweight female pit bull-type dog;

      h. USM-85: a blue female pit bull-type dog;

      i. USM-86: a tan and white, thin female pit bull-type dog;

      j. USM-87: a brown, underweight female pit bull-type puppy;

      k. USM-88: a black, very underweight male pit bull-type dog;[3]

      l. USM-89: a brown, very underweight male pit bull-type dog;

      m. USM-90: a blonde, underweight female pit bull-type dog;

      n. USM-91: a black and white, underweight male pit bull-type dog.[4]

3. The Defendants *in rem* were seized on or about December 6, 2017, from the yards of the above-referenced residence located in 146 Dry Branch Way, Hopkins, South Carolina,

---

found at 146 Dry Branch Way, Hopkins, South Carolina 29061, and 1830 Cunningham Road, Columbia, South Carolina 29210.

[3] USM-088 was euthanized on December 19, 2017 as part of its necessary veterinarian care and on the advice of the veterinarian in charge. 7 U.S.C. § 2156(f) (seized animals "shall be held by the United States marshal or other authorized person pending [their] disposition" and provided "[n]ecessary care including veterinary treatment . . . while the animals are so held in custody.").

[4] Twelve additional pit bull-type dogs were found at 1830 Cunningham Road, Columbia, South Carolina 29210. Jedadiah Nelson, who is an associate of Raqwan Thompson's, claimed ownership of these 12 dogs and surrendered them to K2 Solutions. At that location, the following items commonly associated with dogfighting were found: (a) a spring pole device and dog tread mill, which are used to train dogs involved in fighting; and (b) vitamins and medications for animals, including animal aspirin and iodine.

pursuant to a federal search warrant. They are currently in the custody of U.S. Marshals Service and being cared for by K2 Solutions.

4. The thirteen Defendants *in rem* and any offspring they may have before a final order of forfeiture is entered are subject to forfeiture to the United States pursuant to 7 U.S.C. § 2156(f), as animals involved in a violation of the federal animal fighting venture prohibition section of the Animal Welfare Act, 7 U.S.C. § 2156.

5. Because this Complaint is being filed for the purpose of establishing grounds for forfeiture and providing notice to interested persons, it does not include all of the information known by the Government in connection with the investigation underlying the claims for forfeiture set forth herein.

## KNOWN POTENTIAL CLAIMANTS

6. The persons known to the United States who may claim an interest in the Defendants *in rem* are Jayliq S. Nelson, Alfred Wright and Jedadiah Nelson. The United States will provide direct notice of this action to these possible claimants.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1345 and 1355. Upon the filing of this Complaint, Plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which Plaintiff will execute pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

8. Venue is proper pursuant to 28 U.S.C. § 1355(b) because acts and omissions giving rise to the forfeiture took place in the District of South Carolina.

**STATUTORY BASIS FOR FORFEITURE**

9. The federal Animal Welfare Act, 7 U.S.C. § 2131, *et seq.*, defines "animal fighting venture" as "any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment." 7 U.S.C. § 2156(g)(1). It is illegal to sponsor or exhibit an animal in an animal fighting venture. 7 U.S.C. § 2156(a)(1). It is also illegal to sell, buy, possess, train, transport, deliver, or receive an animal intended for use in an animal fighting venture. 7 U.S.C. § 2156(b).

10. The Animal Welfare Act provides that "[a] warrant to search for and seize any animal which there is probable cause to believe was involved in any violation of this section may be issued by any judge of the United States or of a State court of record or by a United States magistrate judge within the district wherein the animal sought is located." 7 U.S.C. § 2156(f). Animals "seized under such a warrant shall be held by the United States marshal or other authorized person pending disposition thereof by the court in accordance with this subsection." *Id.* In addition, "[n]ecessary care including veterinary treatment shall be provided while the animals are so held in custody." *Id.*

11. The statute also contemplates forfeiture of seized live animals. Specifically,

> [a]ny animal involved in any violation of this section shall be liable to be proceeded against and forfeited to the United States at any time on complaint filed in any United States district court or other court of the United States for any jurisdiction in which the animal is found and upon a judgment of forfeiture shall be disposed of by sale for lawful purposes or by other humane means, as the court may direct.

*Id.* The costs incurred in caring for animals seized and forfeited under this section "shall be recoverable from the owner of the animals (1) if he appears in such forfeiture

4

proceeding, or (2) in a separate civil action brought in the jurisdiction in which the owner is found, resides, or transacts business." *Id.*

12. As explained below, the Defendants *in rem* are animals "involved in [] violation[s]" of 7 U.S.C. § 2156, and are therefore subject to forfeiture to the United States of America pursuant to 7 U.S.C. § 2156.

## BACKGROUND

13. Dog fighting is a violent contest in which two dogs that are bred and conditioned for fighting are released by their owners or handlers in a controlled environment to attack each other and fight for purposes of entertainment or gambling. Fights usually end when one dog withdraws, when a handler "picks up" his dog and forfeits the match, or when one or both dogs die.

14. Dog fighters fight dogs with a goal of obtaining "Champion" or "Grand Champion" status for their dogs, which is achieved by winning three or five fights, respectively. They maintain contact with other dog fighters around the country, and can generate substantial income from gambling on dog fights and from the sale and breeding of fighting animals. Once a dog fighter locates an opponent and agrees upon terms, the match is "hooked," or set up. The dog then undergoes a conditioning process dog handlers refer to as a "keep." A "keep" is typically conducted for six to eight weeks before the scheduled match and involves a training program that may include running and exercising the dogs away from public view, the use of devices such as "spring poles" and "flirt poles" to build jaw strength and increase aggression, and the administration of drugs, vitamins, and other medicine.

15. Dog fighters typically do not start setting up matches for a dog until the dog reaches at least eighteen months to two years of age. Until then, dog fighters may test the dog out by

"rolling" it or having the dog participate in short fights to assess the dog's demeanor. Thus, it is common for dog fighters to possess multiple young dogs who are in the process of being trained to fight.

16. Dogs who have been fought may have scars, puncture wounds, swollen faces, or mangled ears. Scars from organized dog fights are commonly found on the face and front legs, as well as on hind ends and thighs. The majority of the adult Defendants *in rem* had such scarring.

17. In the United States, dog fighting ventures typically involve "pit bull"-type dogs, which dog fighters prefer for their compact muscular build, short coat, and the aggression that some display toward other dogs. A dog fight occurs when two dogs are knowingly released by their handlers in a controlled environment to attack each other and fight. The fight ends when one dog withdraws, when a handler "picks up" their dog and forfeits the match, or when one or both dogs die.

18. It is a common practice for those involved in training and exhibiting fighting dogs to possess several dogs at one time. This practice is followed for several reasons. First, dog fighters maintain a stock of dogs at different weights and both sexes because in dog fights, dogs are matched against other dogs to within a pound of the same weight against dogs of the same sex. Maintaining a stock of several dogs thus increases the odds of owning a dog whose weight meets the requirements for a match being solicited by an opponent.

19. Further, dog fighters must possess an inventory of dogs because dogs often die or are badly injured during fights. Dogs that lose fights or fail to show "gameness" are often killed. It is not uncommon for dogs that lose matches to be killed in cruel, torturous, and inhumane ways as punishment.

20. Dog fighters also maintain multiple dogs in order to selectively breed, sell, and fight dogs displaying certain traits or to otherwise advance a particular dog fighting bloodline. Possessing multiple dogs increases the prospects of owning a dog who will become a Champion or Grand Champion. Dog fighters also routinely test and evaluate their dogs to determine those that exhibit aggressive behavior, including against their own dogs.

21. Dog fighters select the strongest, most capable fighting dogs and selectively breed, sell, and fight only those dogs that display particular traits. Some of these traits are: (1) "gameness" or aggressiveness and propensity to fight other dogs; (2) a willingness to continue fighting another dog despite traumatic and/or mortal injury; and (3) cardiovascular endurance to continue fighting for long periods of time and through fatigue and injury.

22. Another sign of dog fighting is the presence of pit bull-type dogs on heavy or excessive chains, or housed individually in pens or crates. Persons engaged in dog fighting take steps to restrain or isolate dogs used for fighting from one another to prevent them from fighting at unintended times. They may also keep younger dogs they intend to use for fighting out of reach of other dogs to discourage normal socialization. Heavy chains are used to develop neck strength in dogs used for fighting.

**BASIS FOR FORFEITURE**

23. At all times relevant to this Complaint:

    a. Raqwan Thompson ("Raqwan") was a resident of 146 Dry Branch Way, Hopkins, South Carolina ("Dry Branch Residence").

    b. Alfred Wright was a resident of the Dry Branch Residence.

7

    c. Annie Smith ("Annie") was a resident and the owner of 201 Dubard Boyle Road, Columbia, South Carolina. Annie is the grandmother of Santerrio Montinez Smith ("Santerrio") and Dantrell Markeis Smith ("Dantrell").

    d. Dantrell was a resident of 2103 Audubon Avenue, Columbia, South Carolina.

    e. Jedadiah Nelson was a resident at 1830 Cunningham Road, Columbia, South Carolina 29210 ("Jedadiah's Residence").

24. As part of an investigation into narcotics trafficking and illegal dog fighting, special agents of the Federal Bureau of Investigation ("FBI"), working in conjunction with the U.S. Attorney's Office for the District of South Carolina, identified a number of individuals in South Carolina believed to be participating in an interstate network of dog fighters.

25. Over the last several years, the FBI's Columbia Violent Gang Task Force, along with the Richland County Sheriff's Department, has collected evidence from numerous gang and drug investigations, which has established that Santerrio and Dantrell are associates and partners who run a neighborhood gang in the Columbia, South Carolina area. Their gang, referred to as the Smith Brothers neighborhood-based gang ("Smith Brothers NBG"), is involved in dog fighting, among other things.

26. On July 13, 2007, Richland County Sheriff's Department deputies and officers with the Humane Society of the Midlands served a State-authorized search warrant at 647 Campground Road, Columbia, SC 29201. At the time, Santerrio and Dantrell Smith lived at 647 Campground Road, Columbia, SC 29201, along with their father, James Earl Green ("Denny"). Investigators located 18 pit bull fighting dogs hidden at various locations on the property. Of those animals identified, Investigators seized six dogs which had injuries and scars indicative of the animals having been involved in dog fighting. Investigators also

8

found animal medication and dog fighting training devices, to include spring poles, break sticks, scales and a slat mill. A spring pole is a hanging spring device that is designed so that once a dog bites it, the spring pole suspends the weight of the dog thereby strengthening its bite. A break stick is a device used to force a dog's bite open, specifically at the termination of a fight or while training. A slat mill is a manually driven treadmill built with slats of wood used to build the dog's cardiovascular endurance.

27. On July 8, 2010, Richland County Sheriff's Department deputies received an anonymous tip which indicated that dog fighting was actively taking place at the Smiths' former residence located at the 647 Campground Road residence. When law enforcement officials arrived, several subjects were seen fleeing the property. Investigators located 12 pit bulls at various locations on the property. Despite investigators believing that an active dog fight had been taking place, no dogs were seized at the time; however, investigators continued to develop their investigation.

28. On September 8, 2011, Richland County Sheriff's Department deputies responded to another complaint of dog fighting near the Smith's residence located at 647 Campground Road. After responding and documenting observations, investigators identified and seized 24 pit bulls which had injuries and scars indicative of those animals having been involved in dog fighting. Investigators observed blood spatter on the driveway of the residence, indicating that dog fighting had recently occurred, and located dog fighting training devices, to include spring poles and break sticks on the property.

29. From March through July of 2017, the Columbia Violent Gang Task Force conducted a series of Title III wiretaps which focused on a number of telephones being used by the Smith Brothers NBG as well as on various phones used by the Smiths' narcotics suppliers.

On March 30, 2017, the Honorable Margaret B. Seymour, Senior United States District Judge for the District of South Carolina, authorized the original interception of wire and electronic communications over a telephone used by Dantrell Smith (hereinafter referred to as Target Phone 1), as well as over two telephones used by Santerrio. Interceptions over these phones commenced on March 31, 2017. Interceptions over Target Phone 1 were terminated on April 29, 2017 and were not renewed.

30. The Columbia Violent Gang Task Force, along with the Richland County Sheriff's Department, conducted extensive surveillance operations in conjunction with the wiretaps in this investigation. A combination of wire intercepts and physical surveillance revealed that the Smith Brothers NBG is involved in the breeding, fighting and training of dozens of fighting dogs. Agents learned that two of Dantrell Smith's associates, Raqwan and Jedadiah Nelson, store numerous fighting dogs at the Dry Branch Residence and Jedadiah Residence, respectively.

31. On April 4, 2017, at approximately 5:46 p.m., Dantrell and Raqwan had a telephone conference during which they discussed the fact that Raqwan was keeping fighting dogs at the Dry Branch Residence and Raqwan told Dantrell that an animal control officer had visited the Dry Branch Residence to ask about Raqwan's dogs. During that call, Dantrell warned Raqwan to move the dogs and suggested that, otherwise, the officer would be back with the police to seize the dogs.

32. As a result of this call, on June 16, 2017, an FBI Task Force Officer, Holly S. Wagner contacted Richland County Animal Care supervisor Mr. Gary Daniels and asked him to review all of the calls for service that involved complaints about pit bulls dogs on April 4, 2017. According to Richland County Animal Care, on April 4, 2017, Richland County

Animal Care Officers had responded to the Dry Branch Residence in response to an anonymous complaint about sick puppies. A Richland County Animal Care officer spoke with one of the residents at that location, Mr. Alfred Wright, who informed the officer that Mr. Wright and a friend owned eleven pit bull dogs on the property at the Dry Branch Residence. On April 10, 2017, Richland County Animal Care officers returned to the Dry Branch Residence for a follow-up visit and, on this occasion, made contact with Raqwan. Raqwan informed the Richland County Animal Care officers that Wright was going to move some of the dogs to another location. The Richland County Animal Care officers observed seven dogs at the Dry Branch Residence during this visit.

33. On April 8, 2017, at approximately 2:13 p.m., Raqwan called Dantrell, stating that he had fought one of his female dogs with another dog. According to Raqwan, the female dog's leg was injured during the fight but the dog was a willing and competent fighter.

34. On September 6, 2017, a federal grand jury returned an indictment charging Dantrell and Santerrio Smith, along with fourteen others, in a large-scale drug trafficking conspiracy. On September 20, 2017, agents from the FBI, with assistance from agents and officers from the South Carolina Law Enforcement Division and the Richland County Sheriff's Department, executed multiple federal search warrants at three different locations associated with the Smith Brothers NBG. Agents seized a total of 44 pit bull dogs from those locations. Those dogs were placed in the care of the American Society for the Prevention of Cruelty of Animals. On November 20, 2017, this Court granted the United States' request for entry of default judgment, providing for forfeiture of the dogs seized at those three locations that had not been surrendered to the United States. *United States v. 37 Pit-Bull Type Dogs*, No. 3:17-02691-MGL (D.S.C.) (Dkt. 1) (Complaint); *id.* (Dkt. 15)

(Order Granting Request for Entry of Default Judgment and Granting Judgment and Decree of Forfeiture); *id.* Dkt. 16 (Judgment in favor of United States). Once the animals were secure, a forensic veterinarian thoroughly evaluated each of the dogs. According to the forensic veterinarian, many of the seized dogs had multiple wounds and scars that are consistent with dog fighting.

35. On October 25, 2017, at approximately 12:32 p.m., officers from Richland County Sheriff's Department, working with FBI Task Force Officer, Holly S. Wagner, conducted surveillance of the Dry Branch Residence. Officers observed the trailer and the adjacent yard at the Dry Branch Residence. In the yard, officers observed more than ten shelters that appeared to be doghouses. Additionally, in various locations around the property, officers observed a number of dogs which appeared to be secured by chains.

36. Based on this and other evidence, the United States Attorney's Office applied for and received a search warrant for the Dry Branch Residence, *United States v. 146 Dry Branch Way Hopkins SC et al.*, No. 3:17-cr-01156-MCRI (Dkt. No. 3), and Jedadiah's Residence, *United States v. 146 Dry Branch Way Hopkins SC et al.*, No. 3:17-cr-01156-MCRI (Dkt. No. 6).

   B.   *Defendants* in rem

37. On December 6, 2017, FBI agents and other local law enforcement executed federal warrants at the Dry Branch Residence. During the execution of the warrants, agents observed that many of the Defendants *in rem* had scarring or more recent wounds indicating that those Defendants *in rem* had been involved in organized dog fighting.

38. The following dogs are among those who exhibited extensive scarring, wounds, sores, or other injuries:

12

    a. USM-079 (including scarring on the front and hind legs, head, face, and ears);

    b. USM-082 (including scarring on the face and front and hind legs);

    c. USM-083 (including multiple scars on the front and hind legs, face, tail, and hind quarters, fresh wounds on the front left leg and hind quarters, and a large missing portion of its left upper lip);

    d. USM-084 (including scarring on the face, front legs, and hind quarters and fresh wounds on the face, front leg, and left side);

    e. USM-087 (including scarring on the front legs and left ear, and a fresh wound on the right side);

    f. USM-088 (including multiple scars on the face and left ear, tail and hind quarters, as well as fresh wounds on the belly, hind quarters and front legs);[5]

    g. USM-089 (including multiple scars on the belly, face, and front legs, and fresh wounds on the face and tail);

    h. USM-091 (including scarring on the front and hind legs, face, and hind quarters, and fresh wounds on both ears and right hind leg).

39. Consistent with dogs possessed and/or trained for participation in an animal fighting venture, all of the dogs were found restrained or housed individually. Most of the Defendants *in rem* were found wearing thick collars and were chained to the ground or to visible car axels, which prevents the dogs from getting loose and attacking other dogs on the yard.

40. Three of the seized dogs tested positive for heartworms (USM-073, 081, and 085), testing on the dogs showed hookworms in all but one dog, and all had fleas.

---

[5] USM-088 was euthanized on December 19, 2017, see n. 3, *supra*.

41. None of the Defendants *in rem* appeared spayed or neutered, which is common among dogs involved in an animal fighting operation.

42. In sum, the condition in which the Defendants *in rem* were found was not consistent with that of pet dogs of a comparable age.

43. Additionally, a number of items commonly associated with an illegal dog fighting operation were observed and/or seized. For example:

    a. Veterinary supplies. Dog fighters often attempt to mend the injuries of their dogs rather than seek veterinary attention, which may raise suspicion regarding the cause of injuries. Thus, it is common to find veterinary supplies where dogs involved in dog fighting are being kept. FBI agents seized from the Dry Branch Residence the following:

        i. Injectable penicillin, an antibiotic that may be used to treat wounds after a fight;
        ii. Syringes;
        iii. "Blu-Kote," Veterinary Antiseptic-Protective Wound Dressing;
        iv. Iodine-7, an antiseptic wound dressing;
        v. Nutrition products and supplements;
        vi. Paste electrolytes;
        vii. Injectable vitamin B complex;
        viii. Disposable skin staplers, which dog fighters use to attempt to heal wounds resulting from dog fights.

    b. Bona Fide Kennel Club dog registrations (registered to Jayliq S. Nelson–Jedadiah Nelson's son–at 1830 Cunningham Rd., Columbia, South Carolina); dog fighters use registrations to establish bloodlines and market their dogs;

    c. A tread mill, which dog fighters use to condition dogs.

44. Based on the information and allegations set forth herein, there is a factual basis to support a reasonable belief that the Government will be able to meet its burden of proof at trial to show that Defendants *in rem* are subject to forfeiture under the provisions of 7 U.S.C. § 2156(f).

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the Defendants *in rem*; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the Defendants *in rem* be forfeited to the United States of America for disposition according to law; that the Court enter a judgment for costs associated with the care of the Defendants *in rem* pursuant to 7 U.S.C. § 2156(f) should any interested party file a claim for the Defendants *in rem*; and that the United States of America be granted such other relief as this Court may deem just and proper.

    DATED:    December 27, 2017.

Respectfully submitted,

BETH DRAKE
United States Attorney

s/Carrie Fisher Sherard
CARRIE FISHER SHERARD
(Fed. ID. #10134)
Assistant U.S. Attorney
U.S. Attorney's Office
District of South Carolina
55 Beattie Place, Suite 700
Greenville, SC 29601
Tel: (864) 282-2111

J. BRETT GROSKO
Senior Trial Attorney (Maryland Bar)
MARY HOLLINGSWORTH
Trial Attorney, AZ Bar 027080
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
601 D St., N.W.
Washington, D.C. 20004
202-305-0342 (Grosko)
303-844-1898 (Hollingsworth)
Brett.grosko@usdoj.gov
Mary.hollingsworth@usdoj.gov

*Attorneys for the Plaintiff*